**DEUTZ & CROW COMPANY, INC., Respondent,**

v.

**Ted ANDERSON, d/b/a Anderson Construction Company, Appellant.**

No. CO–83–1373.

Court of Appeals of Minnesota.

Aug. 21, 1984.

Arthur F. Blaufuss, Marshall, for respondent.

Bailey W. Blethen, Mankato, Keith D. Simmons, Minneapolis, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and CRIPPEN and PARKER, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Deutz & Crow commenced this action in July 1979 for declaratory judgment, injunctive relief and damages for breach of contract. Appellant Anderson counterclaimed for breach of contract and damages. The matter came on for trial February 24, 1981 and the parties stipulated to a settlement. The judgment based upon the settlement was vacated in March 1982 because the trial court found that Anderson had fraudulently entered into the settlement. This appeal is taken from an October 6, 1982 order striking

Anderson's pleadings for contempt and fraud, granting partial summary judgment to Deutz & Crow and setting certain issues for trial. We affirm in part, reverse in part and remand for trial on remaining issues.

## FACTS

On April 26, 1971, a contract was entered into between respondent Deutz & Crow and appellant Anderson's assignor, the Bladholm Company. Both Deutz & Crow and Bladholm had been in the ready-mix concrete business and the sand and gravel business. Under the contract, Deutz & Crow sold its sand and gravel manufacturing business to Bladholm, and became the distributor for Anderson's manufactured product, ready-mix concrete. Bladholm stopped making ready-mix concrete. The exact contract language is:

> *Distributorship.* So long as you (Deutz and Crow) shall not be in breach of this agreement and shall reasonably perform as such distributor, you shall be our distributor for manufactured sand and rock in Lyon County, Minnesota, and the counties adjacent thereto.

Among the provisions of the contract were the following:

(1) required notice by the Respondent to the Bladholm Company of the use of granite in ready-mix concrete.

(2) that the Respondent should use granite in it's ready-mix concrete only when specified.

(3) provided for a $0.15 per ton hauling discount.

(4) provided that Bladholm Company product be used in ready-mix concrete made in Lyon County.

(5) provided that Respondent could not mine gravel used in concrete production in Lyon County.

(6) that respondent use their best efforts to market the products.

Deutz & Crow and Bladholm Company operated under this contract without incident until 1973. In 1973, Anderson leased the sand and gravel business from the Bla-dholm Company. During this lease period, Deutz & Crow was the distributor for all sand and gravel. The operation of the business remained the same under the contract.

Deutz & Crow contends that from April 26, 1971 on, it acted as the exclusive distributor for Bladholm Company's manufactured sand and rock in Lyon County and counties adjacent thereto. It asserts that the contract, the course of performance, and the practice of the parties, proves it has the exclusive right to distribute defendant's products.

In 1975, Anderson purchased the Bladholm Company and acquired through assignment all the company's rights and duties under the contract. In addition, Anderson assumed certain mining leases acquired by Bladholm by separate contract on April 26, 1971. Deutz & Crow continued to be the distributor. Anderson claims that after he signed the purchase agreement he was told for the first time that Deutz & Crow was the *exclusive* distributor.

In 1979, Deutz & Crow learned that Anderson had been making direct sales of sand and gravel to customers. On May 29, 1979, Anderson sent Deutz & Crow a letter advising them that Anderson intended to establish a separate and independent dealership for its products. Apparently Anderson was dissatisfied with the manner in which Deutz & Crow was performing as distributor. Deutz & Crow then commenced this lawsuit seeking a declaratory judgment, adjudicating the rights and duties of the parties under the April 26, 1971 contract.

Deutz & Crow also seeks:

(1) a declaration that under the contract, Deutz & Crow has the "sole and exclusive right to be the exclusive distributor of the Defendant (Anderson)."

(2) to have the contract reformed to conform to the course of performance and the practice of the parties.

(3) damages for the expenses incurred due to the alleged breach of contract by Anderson.

Anderson admits that the Bladholm Company's rights under the contract were assigned to him; that a controversy has arisen between the parties relative to their legal rights and duties under the contract; and that he sent the May 29, 1979, letter to Deutz & Crow. Anderson alleges that he is the "exclusive manufacturer of sand and gravel products for Plaintiff (Deutz & Crow)."

Anderson alleges: (1) that Deutz & Crow breached the contract; (2) whatever agency they may have possessed under paragraph 5 of the contract has been terminated by their breach of the contract or their failure to perform reasonably as distributor; (3) that Deutz & Crow has refused to deal with certain customers; (4) that they fixed prices at unreasonable levels; (5) that they breached the terms of the lease agreement; and (6) that under the course of performance of the contract by the parties, Anderson has the right to make sales of his products directly and outside of Deutz & Crow's claimed agency. Anderson sought a declaratory judgment that Deutz & Crow had breached the contract or failed to perform reasonably as distributor thereby terminating the distributorship; an accounting; damages in the amount of $750,000 arising from the alleged breaches; and a permanent injunction preventing Deutz & Crow from competing in Lyon County until April 26, 1981, and requiring Deutz & Crow to purchase all its requirements from Anderson.

On September 5, 1979, the district court issued an injunction prohibiting Anderson from making direct sales. The injunction was dissolved on January 2, 1980 because it appeared that Anderson was no longer carrying on the enjoined activities, although the trial court later determined that it had continued to make side sales all along.

On February 24, 1981, on the scheduled trial date, the parties entered into a stipulation whereby Anderson agreed to pay Deutz & Crow $25,000 over a five-year period, Deutz & Crow would "be the exclusive user and distributor of the wholesale product and Ted Anderson would be the exclusive manufacturer of the wholesale product."

It was also stipulated that: a joint letter would be sent out to all customers informing them that Deutz & Crow was the sole distributor, that Anderson would use invoices supplied by Deutz & Crow, and that settlement was conditioned on the parties entering into a written contract. The prices to be set for both the manufacturer price and the distributor price of the product were to be competitive. Disputes under the contract were to be arbitrated.

After the oral settlement was entered into, negotiations took place to execute a written contract. The negotiations broke down because the parties couldn't agree on prices.

In April 1982, both Anderson and Deutz & Crow raised their prices well above the market in violation of the stipulation requiring that both prices be competitive.

Since no sales could be made because of the combined inflated price, Anderson began selling the product directly without Deutz & Crow's distributorship commission added. Deutz & Crow brought a motion for contempt and Anderson lowered his price. After a hearing Anderson was found in contempt for refusing to comply with the settlement agreement.

Anderson refused to send the joint letter or use the invoices supplied by Deutz & Crow as required by the stipulation and consent judgment.

On March 25, 1982, the court, on motion of Deutz & Crow, vacated the settlement and the judgment based thereon. It found that Anderson had fraudulently entered into the settlement with no intention of complying with its terms. The court made an order of reference pursuant to Rule 53, Minn.R.Civ.P., appointing three certified public accountants as arbitrators, one each appointed by the parties and one by the court. Their charge was to determine the

number of side sales of product made by Anderson, the tonnage and the price of each transaction. These numbered in excess of 60. A receiver of the Ted Anderson Co. was appointed for the year 1982 to "oversee all of the commercial sales of sand and rock to members of plaintiff's distributorship and account to the court and respondent for such sales."

On July 8, 1982, Deutz & Crow moved for summary judgment and for damages based on the referee's findings. The trial court granted summary judgment to Deutz & Crow, finding that Anderson breached the contract and committed fraud upon Deutz & Crow in making direct sales. Damages of $175,853.12 were awarded Deutz & Crow. The damages included attorney's fees for all legal work done after the settlement of February 24, 1981. In addition to ordering summary judgment, the trial court struck the pleadings of Anderson for bad faith in the conduct of this lawsuit.

### ISSUES

1. Did the trial court err in granting summary judgment determining that Deutz & Crow was the exclusive distributor of Anderson's product and that Anderson had no right to make side sales pursuant to the April 26, 1971 contract?

2. Were the findings of the arbitrators as to the amount of side sales made by Anderson properly adopted by the trial court?

3. Was the measure of damages used by the arbitrators, i.e., the gross amounts of direct sales made by Anderson, appropriate in this case?

4. Did the court err in converting this contract case to one of fraud based on the actions of Anderson?

5. Did the court err in awarding Deutz & Crow computer-run costs because of Anderson's failure to comply with discovery?

6. Did the trial court err in awarding pre-judgment interest?

7. Did the trial court err in finding that Anderson fraudulently entered into the February 26, 1981 settlement, with no intention of complying with its terms?

8. Did the trial court err in awarding attorney's fees to Deutz & Crow because of Anderson's bad faith conduct of this lawsuit?

9. Did the trial court err in striking Anderson's pleadings as punishment for its conduct of the lawsuit?

10. Did the trial court err in appointing a receiver to oversee Anderson's commercial sales?

### ANALYSIS

If the language of a contract is ambiguous, resort may be had to extrinsic evidence in aid of construction. If the extrinsic evidence is conclusive and undisputed, the determination of the meaning of a contract is a function of the trial judge, but if the extrinsic evidence is inconclusive or disputed, the uncertainty and conflict must be resolved at trial. *Transport Indem. Co. v. Dahlen Transp. Inc.*, 281 Minn. 253, 161 N.W.2d 546 (1968). A contract is ambiguous when it is reasonably and fairly susceptible of more than one construction. *Collins Truck Lines v. Metro Waste Control*, 274 N.W.2d 123, 126 (Minn.1979); *Polk v. Mutual Service Life Ins. Co.*, 344 N.W.2d 427 (Minn.Ct.App.1984). When a contract bears more than one reasonable interpretation, the ambiguity should be resolved against the party who drew the contract. *Telex Corp. v. Balch*, 382 F.2d 211 (8th Cir.1967).

The contract of April 26, 1971, was intended by the parties to be the full and complete expression of their agreement. The preamble to the contract provides that "[o]ur agreement is made on the following terms and conditions." Therefore, it is obvious that this writing was intended by the parties to express their whole agreement. Although extrinsic or parol evidence cannot be used to add, subtract from, or vary the terms of this agreement, parol evidence may be used to explain any ambiguities in the contract as written. Any ambiguities will be construed most strongly against

Anderson, as successor in interest to Bladholm Company, the drafter of the agreement, and read in that sense in which a prudent and reasonable person would understand it.

The instant controversy turns around the construction of paragraph 5 of the agreement which provides that "[s]o long as you [Deutz & Crow, Inc.] shall not be in breach of this agreement and shall reasonably perform as such distributor, you shall be our [Bladholm's] distributor for manufactured sand and rock in Lyon County, Minnesota and the counties adjacent thereto." Deutz & Crow argues that under this provision, it has the exclusive right to sell the products of Anderson. Anderson argues that this provision does not use the word "exclusive," and therefore the distributorship is not exclusive. We agree with the trial court that paragraph 5, above quoted, is "reasonably and fairly susceptible to two different constructions," and therefore, is ambiguous.

The extrinsic evidence of the intention of the original parties is undisputed and conclusive and therefore to be determined by the trial court. Terry Bladholm, appellant's assignor, when asked in his deposition whether the contract provided for an exclusive distributorship, responded: "[a]s long as all the terms were lived to, yes." He further testified that, in the absence of an agreement between Deutz & Crow and him, "all the material was to be run through Deutz and Crow."

■ Anderson is the assignee of the contract between Deutz & Crow and Bladholm. As such, Anderson stands in the place of Bladholm, and has all of the rights and duties of Bladholm. The character of the contract was not changed by the assignment. The meeting of the minds upon which the contract was formed was between Bladholm and Deutz & Crow. *State v. $14,000 Dollars in Various Denominations of United States Currency*, 345 N.W.2d 277 (Minn.Ct.App.1984). Because this contract is ambiguous, only the intentions of Bladholm and Deutz & Crow are relevant to contract interpretation. As

Bladholm's assignee, Anderson is bound by the intentions of Bladholm's and Deutz & Crow's agreement. Anderson's interpretation of the contract is irrelevant.

Since there is no issue of material fact, summary judgment on this issue was appropriate.

Anderson claims that whatever relationship existed between the parties under the contract is terminated for one of two reasons: (1) Deutz & Crow materially breached the contract, or (2) they failed to perform reasonably as a distributor. Anderson alleges that Deutz & Crow breached the contract by using sand and gravel mined and processed at their Canby, Minnesota plant in Lyon and Lincoln Counties, by using crushed granite for concrete production in situations where crushed granite was not called for in the owner's specifications, and by refusing to sell to Dwire, Inc., a Marshall ready-mix firm. These, he alleges, constitute a failure to perform reasonably as distributor.

The trial court found that "plaintiff (Deutz & Crow) has in no way materially breached the contract between the parties at any time, (Finding XIX). It did grant a trial on the issues of sales of ready-mix concrete by Deutz & Crow from its Canby plant into Lyon and Lincoln Counties, and their right to make these sales.

The question of whether the breach was material would have been for trial because it is a fact question, but our decision on the trial court's striking of pleadings in effect supports finding of fact [XIX].

2. The court appointed a panel of three certified public accountants to determine the amount and value of side sales made by Anderson from 1973 through February 1981. The referees held hearings on June 16, 1982 and July 8, 1982. The parties and their counsel were present and had the opportunity to present evidence and be heard. The referees submitted proposed findings of fact and recommendations which were adopted and incorporated into the court's findings and order of October 6, 1982.

The referees determined the commission or distributorship fee per ton that Deutz & Crow would have received if the sales had been made through the distributor according to the contract. They added a discount of $0.15 per ton because this discount was historically given Deutz & Crow on all products sold by them whether hauled by Deutz & Crow or by the customer. The referees found that this discount was the accounting practice throughout the parties' course of dealing. Anderson disputes this finding, which was adopted by the court.

The findings adopted include the following:

1. From 1973 through September 1, 1979, 85,081 tons were sold as side sales, representing lost commissions to Deutz & Crow of $43,363.

2. September 1, 1979 through December 31, 1980, 68,451 tons representing lost commissions including the discount to Deutz & Crow of $41,823.

3. January 1, 1981 through March 31, 1982, side sales resulted in lost commissions to Deutz & Crow of $23,335.

4. The total dollar value in paragraphs 1 through 3 above is $108,522.

The above dollar figures are gross amounts representing commissions and discounts. There was no evidence submitted as to costs of the Deutz & Crow distributorship, and no net profit was determined. Paragraphs 1 and 2, above, are the basis for finding of fact X:

that the defendant knowingly engaged in direct sales to customers of the plaintiff in breach of the above contract and concealed such sales from plaintiff, that from 1973 through February 1981, the defendant's direct sales to customers amounted to fraud and false representation upon the plaintiff, damaging the plaintiff by way of lost distributorship commissions in the amount of $85,186.

Anderson alleges that this suit is in contract, not fraud, that the measure of damages should be loss of net profit, and that Deutz & Crow must prove that it would have made the sales if Anderson had not made them in order to prove its damages.

The referees were appointed after Deutz & Crow's motion pursuant to Rule 53, Minn.R.Civ.P. The order of reference specified that the referees were to report "as to the amount of side sales and the commissions due the plaintiff (Deutz & Crow)."

Rule 53.02 states:

A reference to a referee shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, *save on matters of account*, a reference shall be made only upon a showing that some exceptional condition requires it.

■ Here, Anderson admitted the side sales and the testimony and evidence taken before the referees clearly concerned matters of account. The work papers of the referee showed the date of sale, tonnage, and costs. These facts were primarily, if not entirely, taken from Anderson's books and show the complexity contemplated by Rule 53 to justify an order of reference. The order of reference was proper for an accounting of the damages because of the volume of sales and the type and number of entries on Anderson's books. The findings of the referees, upon trial in this matter, will go to the trier of fact as a directed verdict as to the facts found, but the jury or court must determine the net profit.

3–4. The use of the gross figures as a basis for damages is tied to the trial court's conversion of this contract action to fraud.

The elements of fraud are:

(1) a representation (2) which is false, (3) has to do with past or present fact, and (4) is material, and (5) susceptible of knowledge; (6) representer must know it to be false or must assert it as of his own knowledge without knowing whether it is true or false, and (7) must intend to have other person induced to act, or justified in acting upon it; (8) that person must be so induced to act or so justified in acting, and (9) his action must be in reliance upon representation, and (10) he must

suffer damage (11) which is attributable to misrepresentation.

*Davis v. Re-Trac Mfg. Corp.*, 276 Minn. 116, 149 N.W.2d 37 (1967).

■ In 1973, Anderson leased Bladholm's business; in 1975 he purchased it. He maintained that he had the right to make side sales in 1979. The trial court found that the contract was inartfully drafted and the language in paragraph 5 concerning distributorship was ambiguous. The elements of fraud were not pled, and there is nothing on the record to support an action in fraud.

> Fraud cannot be predicated on a mere promise or agreement to perform. It must affirmatively appear that *at the time the promise was made* there was no intention to perform.

*Wojtkowski v. Peterson*, 234 Minn. 63, 47 N.W.2d 455 (1951) (emphasis added).

Even the facts following the February 24, 1981 agreement do not support a case in fraud. Anderson's attorneys both testified about the efforts they made to reduce the February 24, 1981 stipulation to writing. Exhibits in the form of contract drafts and letters support their testimony. They also said that the reason the contract never materialized was *Deutz & Crow's* insistence on setting the price according to a fixed percentage over Anderson's price, rather than the stipulated competitive price. Unless both attorneys and their exhibits are disbelieved, there simply is no 'conclusive evidence' that at the time the stipulation was entered into Anderson had no intention of performing the contract. The fact that breaches were made starting two months after the stipulation and breakdown of contract negotiations is not, by itself, proof of fraudulent intent on February 24, 1981.

■ Deutz & Crow's damages are the difference between what its profits were and what its profits would have been had the sales made by Anderson gone through the distributorship. Deutz & Crow is entitled to the benefit of the contract and no more. The gross damage figure arrived at by the referees can be used as a basis to arrive at net profit when this matter is tried.

The original contract of April 26, 1971 terminated April 26, 1981; however, the stipulation of February 24, 1981 continued the terms of the contract. This stipulation, and the judgment based thereon was set aside by the court on March 25, 1982. Damages are therefore recoverable for breach of contract only until March 25, 1982.

5–6. The summary judgment granted Deutz & Crow consisted of the following:

| | | |
|---|---|---|
| A. | Side Sales Commissions | $108,522.00 |
| B. | Interest | 29,234.24 |
| C. | Dwire Sale | 9,352.30 |
| D. | Attorney's fees | 21,997.08 |
| E. | Computer run discovery costs | 6,747.00 |

(A) The side sales were based on the referees' findings and have already been discussed above.

■ (B) Interest. Deutz & Crow is entitled to prejudgment interest on side sales made by Anderson.

> Where a claim is unliquidated but ascertainable by computation or reference to generally recognized standards such as market value and the claim does not depend on any contingency interest shall be allowed as for a liquidated claim.

*Moosbrugger v. McGraw-Edison Co.*, 284 Minn. 143, 170 N.W.2d 72, 83 (1969). Here, the amounts and dates of each sale were readily ascertainable from Anderson's records and interest is recoverable if lost profits are proved. Interest is 6 percent per year pursuant to Minn.Stat. § 334.01 (1982). The case cited by Deutz & Crow for varying interest rates concerns the condemnation statute which requires "just compensation" (a constitutional measure) and is inapplicable to this case.

(C) The Dwire sale concerned a transaction where Anderson raised the pit price of his product (the price charged Deutz & Crow) from $4.90 a ton to $6.00 a ton to $12.00 a ton. Deutz & Crow was billed by Anderson for $12.00 a ton for a sale to Dwire. Deutz & Crow paid the full price

and was never paid by Dwire. The trial court found Anderson was unjustly enriched by $9,352.30.

8. (D) The trial court found that Deutz & Crow was entitled to be reimbursed for attorneys' fees incurred from February 24, 1981 until July 19, 1982.

■ The record contains no proof that the attorney fees awarded were related in any way to bad faith acts of Anderson. Which attorney fees, if any, incurred by Deutz & Crow were directly related to bad faith acts of Anderson is a question of fact. Therefore, summary judgment on this issue is reversed. On remand, Deutz & Crow must prove that its attorney's fees were caused by Anderson's bad faith.

■ (E) The computer-run discovery costs were properly the subject of summary judgment. These costs were incurred by Deutz & Crow as a direct result of Anderson's failure to produce documents he had, and which were demanded to be produced. Anderson subsequently produced the data with no problem for the referees. The quantity of the data necessitated the use of a computer.

■ 9. The following facts were found by the court in finding XVI of the October 6, 1982 order as evidence that Anderson acted in bad faith in this lawsuit:

(a) That the Defendant, while under oath before the Court, made false statements as set out in Page 109 of the transcript, line 16. The Defendant acknowledged that he was aware that this was not a correct statement in his own deposition on page 310, line 11.

(b) That the Defendant submitted a Memorandum in opposition to the Temporary Inunction (sic) request of the Plaintiff which included a letter containing false statements about doing business only with people that the Plaintiff refused to do business with. That the Defendant acknowledged in his own deposition on page 278, line 19, that he had been selling direct, and that such direct sales had started in 1978, in direct contradiction to the submitted Memorandum letter.

(c) That the Defendant submitted an Affidavit to the Court dated July 25, 1979, which stated in paragraph II that the Defendant would sell only directly to customers refused service by the Plaintiff, and that he has done this on a few occasions in the past. That the Defendant acknowledged in his own deposition that he not only made sales on more than a few occasions, but that these direct sales were made on many occasions dating back to 1973.

(d) That the Defendant acknowledged that his signature appears on Answers to Plaintiff's Interrogatories, and yet denies on page 297, line 11 of his deposition that he has ever reviewed or looked at the answers to such interrogatories.

(e) Pursuant to valid Demand for Production of Documents by the Plaintiff, the Defendant supplied certain documents to the Plaintiff. That the Plaintiff, relying on the fact that the Defendant supplied the correct records as requested, processed the records incurring computer fees in the amount of $6,747.50. That the Plaintiff then confirmed with the Defendant by use of interrogatories that the information supplied pursuant to the Request for Production of Documents was true. That during the deposition of the Defendant, it was learned that the documents that had been supplied to the Defendant [plaintiff] were incorrect and false as found on page 349 to 385 of the deposition of the Defendant.

(f) That the Defendant did act in bad faith in entering into a Stipulation with the Plaintiff on February 24, 1981, such bad faith being specifically set forth in the Court's Findings of Fact dated March 25, 1982.

(g) That the Defendant, while under a Court ordered injunction prohibiting direct sales to customers of the Plaintiff's distributorship, did make such sales in violation of the injunction.

(h) That the Defendant has contested the size of his direct sales to customers for

the entire time of this litigation, and has forced the Plaintiff to reconstruct the records of the Defendant from primary source documents in order to arrive at the amount of such side sales. That after much time, expense, and litigation, the Defendant came forward with information at the hearing of the referees with substantially the same number of side sales as the Plaintiff has been forced to reconstruct during the litigation.

These findings were the basis for paragraph 1 of the October 6, 1982 order striking the pleadings of the defendant as punishment for his contempt for the judicial process and his lack of good faith in conducting the lawsuit.

It is a venerable and recurring theme of our jurisprudence that "due process' of law signifies a right to be heard in one's defense. *Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897).

In *Hovey* there was no hearing. The appellant refused to obey a preliminary order requiring him to deposit into the court certain bonds which were the subject of the suit. As punishment for his contempt, the trial court struck his answer and gave judgment on the merits to respondent. The U.S. Supreme Court while acknowledging the inherent power of the court to punish for contempt, reversed because appellant was not given the opportunity to be heard.

In *Hovey,* as in all subsequent cases where the pleadings were struck or the action dismissed for contempt of court, an actual court order had been violated. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) and *United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365 (9th Cir.1980).

In *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062 (2nd Cir.1979) the court adopted the United States Supreme Court holding in *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909) that "the most drastic sanctions may NOT be imposed as "mere penalties." In *Cine* the court found grossly *negligent* conduct in failing to obey court orders compelling discovery justified preclusion of proof of damages.

The court specified 3 objectives such harsh sanctions serve:

(1) insures a party will not profit from its own failure to comply with court orders,

(2) serves as a specific deterrent to the parties in future litigation and as a general deterrent to other parties in other lawsuits,

(3) punishment.

In the case before us, no court order was sought by Deutz & Crow because Anderson produced the documents demanded, affirming that they were all he had. In fact, they were not. They were only primary source documents which forced Deutz & Crow to incur lost time and more than $6,000.00 in computer expense to duplicate. Minn.R.Civ.P. Rule 37.01(3) states: ". . . an evasive or incomplete answer is a failure to answer."

Anderson's conduct in deceitfully complying with discovery is as willful as a failure to comply with a court order and should be treated in as serious a manner.

Anderson's deceptive and deceitful conduct caused untold wasted time and effort for both Deutz & Crow and the court and was contemptuous of the judicial process.

Severe as it is, this record supports the action of the trial court in striking Anderson's answer and counterclaims. Anderson had ample warning from the court's orders and memoranda of the effect of his behavior. The court order of March 25, 1982, ordered him to show cause why his answer and counterclaim should not be dismissed with prejudice "as punishment for its lack of good faith and contempt of the judicial process."

*Hammond* prohibits this severe sanction as a "mere penalty", but the 5 year duration of this lawsuit, the fact that five or six different attorneys were involved, and the number of customers of the parties give

strong indication that this order will be a deterrent to others to engage in conduct like Anderson's designed to thwart the orderly progress of litigation. It also insures that Anderson will not profit from his deceptive tactics.

10. The court erred in appointing a receiver for Anderson to be effective in April of 1982. There was no contract between the parties after the court order of March 25, 1982 vacated the stipulation and judgment based thereon. The original contract expired because the non-compete agreement between the parties expired on April 26, 1981. Deutz & Crow had no right to any accounting of Anderson's sales as of April 1982. Damages for breach of contract may only be claimed until March 25, 1982.

### DECISION

We affirm the trial court's grant of partial summary judgment construing an ambiguous contract. We affirm the trial court's appointment of referees to determine the amount of side sales. However, we reverse its decision to use gross sales as the measure of damages. On remand, the trier of fact may use the referee's report of gross sales as a basis for determining net profits lost by Deutz & Crow as a result of side sales made by Anderson.

We reverse the trial court's decision to convert this contract action into one of fraud. We reverse the trial court's grant of summary judgment on attorney fees and remand this issue for trial. Whether Deutz & Crow incurred attorney fees as a direct result of Anderson's bad faith in the conduct of this lawsuit is a jury question. On remand, Deutz & Crow have the burden of proof on this issue. We affirm the trial court's striking of Anderson's pleadings.