Jerome O. BENSON, Appellant,

v.

CITY OF LITTLE FALLS, Respondent.

No. C7-85-1312.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Michael O. Burns, Michael O. Burns & Assoc., St. Cloud, Paul Widick, Van Drake & Van Drake, Ltd., Brainerd, for appellant.

Robert J. Phillips, Phillips Law Office, Little Falls, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG, and NIERENGARTEN, JJ.

PARKER, Judge.

This is an appeal from a judgment denying appellant Jerome Benson's claim to additional severance pay. Benson contends the trial court erred in construing an ambiguous contract term in favor of the drafting party. Respondent City of Little Falls disagrees, arguing the trial court correctly interpreted the contract when it held Benson had been fully compensated. We affirm.

**FACTS**

After working as a full-time firefighter for 27 years, Benson retired in 1984. He applied for severance pay under a Little Falls city ordinance which entitles all permanent city employees to severance pay equal to "100 working days." The city paid Benson for 100 eight-hour days ($8,544); Benson claims he was entitled to a payment equal to 100 24-hour days ($25,632) because as a firefighter his work day consisted of a 24-hour shift. At the court trial, the dispute involved the interpretation of the term "working days."[1]

The evidence is undisputed. The city employed three full-time firefighters who worked 24-hour shifts followed by 48 hours off. In 1973 or 1974, prior to passage of the ordinance, Benson and other members of the fire department met with the city council to discuss whether the firefighters should work a normal eight-hour day. The firefighters expressed a preference for 24-hour shifts. The subjects of benefits or severance pay were not discussed.

Benson was the first firefighter to retire, but he was not the first to receive severance pay. In 1977 firefighter Roland Heu-

rung was asked to resign after he was found intoxicated on the job. A 1977 payroll voucher signed by Benson, who was fire chief at the time, shows Heurung received "[s]ev. pay 800 hrs (100 days @ 8 hours)." The city contends this precedent establishes that a "working day" is an eight-hour day.

Benson contends his case is different from Heurung's; the city was not legally obligated to pay Heurung because he was not 60 years old when he resigned and thus had not met the retirement criteria under the ordinance. The evidence indicates the city may have paid Heurung for two reasons. Heurung may have been entitled to severance pay because he had applied for disability benefits under the Public Employees Retirement Act (PERA). Under the city ordinance, an employee is entitled to severance pay before reaching age 60 if qualifying for early retirement benefits under PERA. Heurung's payment may also have been made in settlement of any dispute Heurung might have had with the city over his resignation.

Benson also asserts that the city's interpretation of other sections of the ordinance supports his position. Benson was ill for almost a year between June 1980 and May 1981. Under the terms of the 1977 ordinance relating to sick leave,[2] he was paid sick leave based on a 24-hour day.

In 1982 the city amended the sick leave provisions and the vacation and holiday pay provisions for full-time firefighters. Thomas Manninen, the city administrator, testified those sections were changed so firefighters would receive the same sick leave and vacation benefits as other eight-hour employees. However, the section relating to severance pay was not amended because the city believed the meaning of the term "working days" was clear and because past practice had established it meant an eight-

---

1. Benson had also sought additional vacation pay, which was granted by the trial court. This appeal involves only severance pay.

2. The section of the ordinance relating to sick leave provides benefits at the rate of one day per month up to a total of 120 days; it does not

limit such days to eight hours of regular salary. The section relating to vacations provides that "each vacation day [is] not to exceed eight (8) hours of regular salary" and "[a] work day is defined as a day upon which an employee would work if he was not on vacation."

hour day. Fire chief Nieman testified that he expected his severance pay to equal 100 eight-hour days "as with Mr. Heurung." Benson implies the city chose not to change the provision in 1982 because it did not want to affect his entitlement to severance, which had vested in 1977 after 20 years of service, and because such an amendment would amount to an admission that the 1977 ordinance was intended to mean 100 24-hour days.

## ISSUE

Did the trial court err in construing an ambiguous contract term in favor of the drafting party?

## DISCUSSION

■ This is an appeal from a judgment only; no post-trial motions were made. The only questions for review are whether the evidence sustains the findings of fact and whether such findings of fact sustain the conclusions of law and judgment. *Gruenhagen v. Larson,* 310 Minn. 454, 246 N.W.2d 565 (1976).

■ Benson asserts the trial court erred in refusing to interpret this ambiguous contract term strictly against the drafting party. When a contract bears more than one reasonable interpretation, any ambiguity should generally be resolved against the party who drew the contract. *Deutz &. Crow Co., Inc. v. Anderson,* 354 N.W.2d 482, 486 (Minn.Ct.App.1984) (citing *Telex Corp. v. Balch,* 382 F.2d 211 (8th Cir. 1967)). However, this rule of construction does not give rise to a presumption that the non-drafting party is entitled to a favorable interpretation of the contract; nor does it imply that the burden of proof is on the drafting party, especially in this case where the drafting party prevailed below. *See, e.g., Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 67 (Minn.1979) (rule that ambiguous terms be construed against the drafter does not "ineluctably lead to the conclusion that the drafter is to lose;" other rules of construction, such as that requiring language to be given its plain and ordinary meaning, may compel a different result).

■ When a contract is ambiguous, courts look to the intent of the parties. *Cherne Industrial, Inc. v. Grounds & Associates,* 278 N.W.2d 81, 88 (Minn.1979). In this case the evidence shows that the firefighters themselves preferred to work 24-hour shifts instead of eight-hour days and that the present fire chief expects to receive severance pay equal to 100 eight-hour days when he retires. Most importantly, the evidence establishes a prior interpretation of the section of the ordinance in dispute here. While there is conflicting evidence as to whether the city was obligated to pay Heurung severance or whether it did so gratuitously, the payment was still labeled severance, equal to 800 hours (100 "working days"), and approved by Benson himself. Benson's analogy of the severance pay section with the other sections of the ordinance relating to sick leave and vacation pay is not persuasive given this prior interpretation.

Equity also compels finding Benson entitled to severance pay equal to only 100 eight-hour days. Acceptance of his interpretation would entitle him to triple the severance pay available to other city employees. Such a result would be unfair to those who receive severance pay based only on an eight-hour work day. It would also be patently unfair to allow Benson, who approved Heurung's pay of 100 eight-hour days, to construe the same city ordinance in a different way and collect three times the amount Heurung was paid.

## DECISION

■ The trial court correctly construed an ambiguous term in a section of a city ordinance based upon a prior interpretation of the same section.

Affirmed.