STATE of Indiana, Appellant–Plaintiff,

v.

Andrew GIBBS, Appellee–Defendant.

No. 21A01–0103–CR–216.

Court of Appeals of Indiana.

Feb. 20, 2002.

Publication Ordered May 23, 2002.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Thomas M. Thompson, Smith & Thompson, Connersville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

The State of Indiana appeals the trial court's ruling granting Gibbs's motion to dismiss the criminal charge against him for carrying a handgun without a license on school property, a class C felony.[1] Specifically, the State claims that the trial court ignored the plain language of the criminal statute when it ruled that possession of an inoperable handgun could not serve as the basis of the charge against Gibbs.

### FACTS

The undisputed facts are that on November 13, 2000, the Principal of Connersville Senior High School received an anonymous telephone call stating that Gibbs had a handgun in his vehicle. When questioned by Matt Sizemore, the school's security officer, Gibbs admitted that he had an antique handgun in the trunk of his vehicle. Gibbs's vehicle was parked in the school's parking lot.

Sizemore escorted Gibbs to the vehicle and Gibbs opened the trunk revealing a red gun case. The gun case contained a seventy-five-year-old Smith and Wesson .38 Special handgun. When Sizemore attempted to open the cylinder of the handgun to determine whether it was loaded, he was unable to do so because it was jammed. Sizemore and Gibbs then returned with the handgun to the Principal's office, whereupon the Principal contacted the police.

Officer Ellis McQueen of the Connersville City Police Department was one of the officers who responded to the call. Officer McQueen took the handgun from Sizemore and also attempted to open the cylinder but found it jammed. The officer later testified that the gun's condition made it incapable of firing a projectile.

As was his custom when taking juveniles into custody, Officer McQueen contacted the Probation Department. The Probation Department informed him that the case was outside of its jurisdiction as seventeen-year-old Gibbs would be charged as an adult. In order to confirm the accuracy of this information, Officer McQueen contacted Judge Daniel Pflum. Judge Pflum told the officer that he did not believe that Gibbs could be charged with carrying a handgun without a permit because the gun was inoperable. Accordingly, Officer McQueen elected not to arrest Gibbs at that time.

However, Gibbs was later arrested after the State charged him with carrying a handgun without a license as a class C felony. Gibbs filed a motion to dismiss this charge on January 24, 2001, alleging that an inoperable handgun did not meet the statutory definition of a "firearm" and, thus, could not serve as the basis of the charge against him. After a hearing, the

---

1. IND.CODE §§ 35–47–2–1 and –23(c)(1)(A).

trial court granted Gibbs's motion, ruling that the "device in this cause was clearly not operable and cannot be considered a firearm" within the meaning of the criminal statute. Appellant's App. at 42. The State now appeals.

### DISCUSSION AND DECISION

The State of Indiana contends that the trial court erred in granting Gibbs's motion to dismiss the criminal charge against him for carrying a handgun without a license on school property. Specifically, the State claims that the trial court ignored the plain language of the criminal statute when it ruled that possession of an inoperable handgun could not serve as the basis of the charge against Gibbs.

■ The interpretation of a statute is a question of law which we review de novo. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct. App.2000). Under a de novo review standard, we owe no deference to the trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* However, when the language is susceptible to more than one construction, we must construe the statute in accord with the apparent legislative intent. *Id.* This is done by giving effect to the ordinary and plain meaning of the language used in the statute. *Id.* Penal statutes are to be strictly construed against the State to avoid enlarging them by intendment or implication beyond the fair meaning of the language used. *Id.*

■ In this instance, the State charged Gibbs with carrying a handgun without a license pursuant to I.C. § 35-47-2-1. Indiana law enhances a class A misdemeanor of carrying a handgun without a license to a class C felony if that act occurs on school property. *See* I.C. § 35-47-2-23(c)(1)(A). For the purposes of I.C. § 35-47-2-1:

> "Handgun" means any firearm:
> (1) designed or adapted so as to be aimed and fired from one (1) hand, regardless of barrel length; or
> (2) any firearm with:
> (A) a barrel less than sixteen (16) inches in length; or
> (B) an average length of less than twenty-six (26) inches.

I.C. § 35-47-1-6. The term "firearm" is defined as "any weapon that is capable of or designed to or that may readily be converted to expel a projectile by means of an explosion." I.C. § 35-47-1-5.

In *Manley v. State,* 656 N.E.2d 277, 279 (Ind.Ct.App.1995), *trans. denied,* this court directly addressed the issue of whether Indiana law requires the State to prove that a handgun is operable to obtain a conviction for carrying a handgun without a license. We determined that, "[a]ccording to the plain terms of the statutes," the State is not required to prove a handgun is operable to obtain a conviction for this offense. *Id.* Rather, it is sufficient for the State to establish "[t]hat the handgun was *designed* to expel a projectile by means of an explosion." *Id.* (emphasis supplied); *see* I.C. § 35-47-1-5.[2] Gibbs's handgun,

---

**2.** Gibbs asserts that *Manley* is distinguishable from the case at bar. *Manley* dealt with the defendant's claim that there was insufficient evidence to support his conviction for carrying a handgun without a license because the State failed to offer evidence that the handgun was operable. Appellee's brief at 6. In contrast, in the case at bar, "there is clear and

convincing evidence that Gibbs's firearm was inoperable." Appellant's App. at 6. However, this is a distinction without meaning inasmuch as resolution of the sufficiency issue in *Manley* required us to determine whether the handgun's operability was an element of the charged offense. Our determination in *Manley* that "Indiana law does not require that

even though inoperable, was designed to expel projectiles by means of an explosion. Thus, it falls within the statutory definition of a firearm and can serve as the basis of a charge of carrying a handgun without a license.[3]

The statute's requirement that a handgun need only have been designed to expel a projectile by means of an explosion, rather than actually and currently capable of doing so, likely reflects our legislature's recognition that even an inoperable gun is inherently dangerous. Such recognition is supported by our supreme court's opinions in *Al–Saud v. State*, 658 N.E.2d 907, (Ind. 1995) and *D.B. v. State*, 658 N.E.2d 595, 595–96, (Ind.1995), and an opinion of the United States Supreme Court, *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986).

In *Al–Saud v. State*, 658 N.E.2d at 908–910, and *D.B. v. State*, 658 N.E.2d at 595–96, our supreme court determined that an unloaded firearm can create a substantial risk of bodily injury under Indiana's criminal recklessness statute. The court reached this decision on the basis that "[t]he brandishing of a firearm in a congested area or during a dispute can create a variety of risks of bodily injury to others, regardless of whether the weapon is loaded." *Al–Saud*, 658 N.E.2d at 910.

An earlier decision by the United States Supreme Court expounds upon the kinds of risks created by the presence of an unloaded handgun. In *McLaughlin*, 476 U.S. at 16, 106 S.Ct. 1677, the Supreme Court ruled that an unloaded handgun constitutes a "dangerous weapon" within the meaning of the federal bank robbery statute. *Id.* at 17, 106 S.Ct. 1677. In reaching its conclusion, the Supreme Court acknowledged the danger inherent in even an unloaded gun and stated:

> Three reasons, each independently sufficient, support the conclusion that an unloaded gun is a "dangerous weapon." First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

*Id.* at 17–18, 106 S.Ct. 1677. The U.S. Supreme Court's rationale in *McLaughlin* is equally applicable to the case at bar. Whether a gun is operable, just as whether

the State prove a handgun is operable to obtain a conviction of carrying a handgun without a license" establishes that operability is not an element of this offense and is dispositive of the issue in this case. 656 N.E.2d 277, 279 (Ind.Ct.App.1995).

**3.** We note that the State of Florida's criminal code also defines "firearm" as "any weapon ... which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive." Fla. Stat. Ann. § 790.001(6) (West 1993). However, the Florida legislature has made an express exception for "antique firearms" unless they are used in the commission of a crime. *Id.* § 790.001(6). An antique firearm is defined

as "any firearm manufactured in or before 1918, and any firearm using fixed ammunition manufactured in or before 1918, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade." *Id.* § 790.001(1). In contrast, the Indiana legislature has not provided an exception for antique firearms. Therefore, regardless of the handgun's age, if it was "designed to expel a projectile by means of an explosion," *see* I.C. § 35–47–1–5, and meets the handling and barrel-length requirements of I.C. § 35–47–1–6, then it constitutes a "firearm" according to Indiana Law.

it is loaded, is not generally discernible without close inspection. Thus, the mere sight of a gun is sufficient to provoke a fearful response from the average citizen, who is very unlikely to wait to determine the weapon's operability before reacting in a panicked or violent manner. We, therefore, conclude that possession of an inoperable handgun can serve as the basis of the offense of carrying a handgun without a permit. Accordingly, the State was not required to prove that the handgun was operable as part of its prima facie case and the trial court erred in granting Gibbs's motion to dismiss.[4]

Judgment reversed and remanded for proceedings not inconsistent with this opinion.

NAJAM, J., and MATTINGLY–MAY, J., concur.

### ORDER

The Court having heretofore handed down its opinion in this appeal on February 20, 2002, marked Memorandum Decision, Not for Publication.

Comes now the State of Indiana, by counsel, and files herein its Motion to Publish, alleging therein that this opinion should be published because it clarifies an existing law and that this cause involves a factual issue of substantial public importance.

The Court having examined said Motion and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellant's Motion to Publish Opinion is granted and this Court's opinion heretofore handed down in this cause on February 20, 2002, marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.

---

**4.** Gibbs cites an unpublished opinion by the Washington Court of Appeals to support his argument that an inoperable gun cannot be the basis for the offense of unlawful possession of a handgun. Appellant's brief at 6. In *Washington v. Moore*, No. 19434–1–II, 1995 WL 914086, at *1 (Wash.Ct.App. Mar. 21, 1997), the defendant, a juvenile, was convicted after a bench trial of unlawful possession of a firearm after he took a gun to school. The gun was incapable of being fired because it lacked a firing pin, so the defendant argued that it did not constitute a "firearm" within the meaning of the criminal statute. *Id.* at *1. The Washington criminal statute in question provided that a " 'firearm' means a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." *Id.* The Washington Court of Appeals construed the statute to "limit[ ] the term 'firearm' to a weapon or device from which a projectile could be fired at some past, present, or future time." *Id.* at *1. Because the trial court's findings were ambiguous as to whether the weapon could have been fired at any other time, the Court of Appeals concluded that there was insufficient evidence to support the conviction. *Id.* Notwithstandng Gibbs's citation to *Washington v. Moore*, we need not look beyond the plain language of our statutes. Specifically, I.C. § 35–47–1–5 does not require that the weapon be capable of being fired at any time to meet the statutory definition of a firearm. Rather, it is sufficient that the weapon was simply *designed* to expel a projectile by means of an explosion. I.C. § 35–47–1–5. Thus, *Washington v. Moore* has no persuasive value in the case at bar.