Melissa WOODWARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0301–CR–8.

Court of Appeals of Indiana.

Nov. 7, 2003.

Kevin Wild, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Melissa Woodward appeals the sentence she received for her conviction of Operating a Vehicle While Intoxicated (OWI),[1] a class D felony. Woodward presents the following restated issue for review: Did the trial court err, when sentencing Woodward, in applying the provisions of Ind. Code Ann. § 35–30–2–2(b)(4)(Q) (West, PREMISE through 2002 1st Special Sess.), instead of I.C. § 9–30–5–15(b)?

We affirm.

The facts favorable to the conviction are that on December 5, 2002, Woodward pled guilty to operating a vehicle while intoxicated, which was elevated to a class D felony because she had two previous OWI offenses. The instant offense was committed on May 11, 2002. With respect to the previous offenses, she was arrested for the first offense on May 27, 1999, and sentenced on July 8, 1999. She was arrested for the second offense on June 14, 1999, and sentenced on August 26, 1999. On December 6, 2002, the trial court sentenced Woodward in the instant case to 365 days, of which 185 days was suspended and 180 days was executed. The trial court explicitly stated that it imposed the 180–day executed sentence because it interpreted the statutory guidelines to prohibit reducing the executed sentence below that amount. Woodward appeals only that aspect of the sentence.

The issue in this case is straightforward: which statute governs Woodward's sentence, particularly with respect to the question of how much of the sentence is nonsuspendable? The parties contend alternately that it is either I.C. § 9–30–5–15(b) or I.C. § 35–50–2–2(b)(4)(Q) (hereinafter the General Suspension Statute; *Saintignon v. State*, 749 N.E.2d 1134 (Ind. 2001)). The State argues that Woodward should be sentenced pursuant to the General Suspension Statute, which provides that a sentence imposed for an OWI con-

---

1. Ind.Code Ann. § 9–30–5–3 (West, PREMISE through 2002 1st Special Sess.).

viction under I.C. § 9–30–5–3 may not be suspended such that the defendant serves less than the minimum prescribed sentence, which in this case is 180 days. Woodward counters that she should be sentenced pursuant to I.C. § 9–30–5–15, which provides that all but 10 days of the sentence is suspendable. The matter may be further narrowed to a single question: does the General Suspension Statute apply? If it does, then the trial court correctly concluded that a 180–day executed sentence was the minimum that it could impose.

■ We begin by noting that this court has already determined that I.C. § 9–30–5–15 does not apply on facts such as are present in Woodward's case. We have held that the "1999 amendment to Section 9–30–5–15, and specifically the addition of subsection (b), was intended to act as a 'gap-filler,' or to require a term of imprisonment for one convicted of OWI more than twice, but not convicted of a felony." *Simmons v. State*, 773 N.E.2d 823, 828 (Ind.Ct.App.2002), *trans. denied*. Inasmuch as the instant offense is a class D felony, I.C. § 9–30–5–15 does not apply. Therefore, we turn our attention to I.C. § 35–50–2–2.

Woodward contends that the General Suspension Statute does not apply because a crucial condition set out therein is not present on the facts of her case. That condition concerns the prior convictions. Woodward notes that the General Suspension Statute provides that the two predicate offenses must be "prior unrelated" offenses, and contends that phrase should be defined as follows: "The commission of the second felony must be subsequent to the sentencing for the first, and the sentencing for the second felony must have preceded the commission of the current felony for which the enhanced sentence is being sought." *Warren v. State*, 769

N.E.2d 170, 172 n. 2 (Ind.2002) (addressing the General Habitual Offender Statute). Woodward argues that the General Suspension Statute does not apply because of the absence of the proper sequencing. The State counters that the sequencing requirement set out in *Warren* does not apply for convictions under I.C. § 9–30–5–3. It is sufficient, according to the State, to prove that the defendant has two previous OWI convictions in addition to the instant conviction. Our courts have not heretofore addressed this question.

■ We are called upon to interpret the General Suspension Statute. Our standard of review in such matters is well settled, and is reflected in the following excerpt:

> The interpretation of a statute is a question of law which we review de novo. Under a de novo review standard, we owe no deference to the trial court's legal conclusions. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. However, when the language is susceptible to more than one construction, we must construe the statute in accord with the apparent legislative intent. This is done by giving effect to the ordinary and plain meaning of the language used in the statute. Penal statutes are to be strictly construed against the State to avoid enlarging them by intendment or implication beyond the fair meaning of the language used.

*State v. Gibbs*, 769 N.E.2d 594, 596 (Ind. Ct.App.2002), *trans. denied*.

The main thrust of Woodward's argument is that the meaning of "prior unrelated" must be construed by reference to two other statutes, i.e., I.C. § 35–50–2–8 (the General Habitual Offender Statute) and I.C. § 35–50–2–10 (the Habitual Substance Offender Statute). Those statutes, like the General Suspension Statute, refer to

"prior unrelated" offenses. *See* I.C. § 35–50–2–8(a) & (c) and I.C. § 35–50–2–10(b), (c), & (e), respectively. The General Habitual Offender Statute and the Habitual Substance Offender Statute differ from the General Suspension Statute, however, in that the former provide for enhanced punishment of certain recidivist offenders. *See Greer v. State*, 680 N.E.2d 526 (Ind. 1997), *cert. denied*, 521 U.S. 1125, 117 S.Ct. 2524, 138 L.Ed.2d 1025. The General Suspension Statute, on the other hand, does not create a special status that subjects a defendant to sentence enhancement. Instead, it provides guidelines for determining whether, and how much, certain sentences may be suspended.

■ There is a second and more significant difference between the two habitual offender statutes and the General Suspension Statute. The General Habitual Offender Statute and Habitual Substance Offender Statute each provide that habitual offender status may be established by proof that "the person has accumulated two (2) prior unrelated ... convictions." I.C. § 35–50–2–8(a); I.C. § 35–50–2–10(b). The General Suspension Statute provides that a trial court can suspend any part of a sentence for a conviction except for a conviction under I.C. § 9–30–5 if the person who committed the offense "has accumulated at least two (2) prior unrelated convictions under I.C. § 9–30–5." I.C. § 35–50–2–2(b)(4)(Q). Although the "prior unrelated" language is the same in all three statutes, one factor persuades us to con-

strue the latter provision differently from the other two. Namely, the General Habitual Offender Statute and the Habitual Substance Offender Statute *explicitly* provide that "prior unrelated" imposes a sequential requirement with respect to the three offenses. *See* I.C. § 35–50–2–8(c)(1) & (2);[2] I.C. § 35–50–2–10(c).[3] The General Suspension Statute contains no such provision. Therefore, if such a requirement is imposed in the General Suspension Statute, it must be accomplished by resort to the rules of statutory construction.

■ When the legislature has not defined terms used in a statute, we ascribe to words their common and ordinary meaning. *Koppin v. Strode*, 761 N.E.2d 455 (Ind.Ct.App.2002), *trans. denied*. In determining the plain and ordinary meaning of words, we may consult English language dictionaries. *Id.* The prefix "un" means the opposite of, and "related" means connected or linked together in some way. *Merriam–Webster OnLine Dictionary*, available at http://www.m-w.com. The plain and ordinary meaning of "unrelated" is therefore "not connected" or "not linked together." "Connected" in this context conveys a temporal element in the sense that the offenses could not have been committed at the same time. "Prior" means "earlier in time or order." *Id.* That term is used in the General Suspension Statute with reference to the predicate offenses and therefore addresses the temporal relationship between the instant conviction and those predicate convictions.

**2.** That provision provides:

A person has accumulated two (2) prior unrelated felony convictions for purposes of this section only if:

(1) the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction; and (2) the offense for which the state seeks to have the person sentenced as a habitual offender was committed af-

ter sentencing for the second prior unrelated felony conviction.

**3.** That provision provides:

After a person has been convicted and sentenced for a substance offense committed after sentencing for a prior unrelated substance offense conviction, the person has accumulated two (2) prior unrelated substance offense convictions.

Therefore, "prior unrelated" convictions within the meaning of the General Suspension Statute refers to offenses that were committed before the instant offense and were reduced to judgment before the instant conviction was entered. Beyond that, we perceive no indication that the Legislature intended to establish a requirement with respect to the sequence of commission and entry of conviction concerning the three offenses.

We note that this interpretation finds support elsewhere in the General Suspension Statute. We have already observed that, in the General Habitual Offender Statute and the Habitual Substance Offender Statute, the Legislature has demonstrated the ability and inclination to make explicit its intent to impose sequential criteria where such is intended. This propensity is also demonstrated in the General Suspension Statute. *See* I.C. § 35–50–2–2(b)(3) ("and less than three (3) years have elapsed between the date the person was discharged from probation, imprisonment, or parole, whichever is later, for a prior unrelated felony conviction and the date the person committed the Class D felony for which the person is being sentenced"); *see also Hill v. State*, 751 N.E.2d 273, 277–78 (Ind.Ct.App.2001) ("Ind.Code § 35–50–2–2(b)(3) envisions a prior unrelated felony being committed, the defendant being charged and convicted for the prior unrelated felony, the defendant being completely discharged from probation, imprisonment, or parole for the prior unrelated felony, and then the defendant commits a Class D felony").

In summary, we conclude that "prior unrelated convictions", as used in I.C. § 35–50–2–2(b)(4)(Q), does not impose a sequential requirement concerning the dates of commission and conviction relative to the predicate offenses, except that those convictions must be entered before judg-ment was entered on the instant offense. These conditions were met in Woodward's case. Therefore, I.C. § 35–50–2–2(b)(4)(Q) applies here. The trial court did not err in sentencing Woodward.

Judgment affirmed.

RILEY, J., concur.

SULLIVAN, J., concurring in part and dissenting in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that the trial court did not err in sentencing Woodward to 180 days executed time and suspending the other 185 days of the sentence. I do so because although the two prior convictions were not prior unrelated felonies as defined in the Habitual Offender statutes, they were in fact prior and unrelated both as to the instant offense of May 11, 2002 and as to each other.

Where I part company with the majority is with regard to the conclusions that the temporal relationship among and between the respective felonies only concerns the temporal relationship "between the instant conviction and those predicate convictions [and that] 'prior unrelated' convictions within the meaning of the General Suspension Statute refers to offenses that were committed before the instant offense and were reduced to judgment before the instant conviction was entered." Op. at 263–264.

This analysis requires no temporal examination as between the two prior convictions and would permit application of the General Suspension Statute as to prior convictions which are clearly related in "time or order." *Id.*

For example, under the majority's holding, a trial court could suspend only the minimum sentence if the defendant had on

a prior date operated a vehicle while intoxicated, a violation of I.C. 9–30–5, and at the same time was in violation of the statute prohibiting tampering with or circumventing an ignition interlock device on the vehicle. *See* I.C. § 9–30–5–8. Both such offenses would be clearly related to each other even though both are unrelated to the instant offense.

Thus, although I agree that under the General Suspension Statute the date of commission of the second prior offense need not follow the sentencing for the first prior offense, the two prior offenses must be unrelated to each other when committed. That temporal unrelationship is pres-

ent in the case before us. Woodward admitted that her first prior offense took place May 27, 1999, and the second offense took place on June 14, 1999. They were not only prior and unrelated to the offense of May 11, 2002. They were unrelated to each other.

For this reason I concur in affirming the sentence imposed by the trial court.