Fabian S. WHITE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A05–0509–CR–506.

Court of Appeals of Indiana.

June 26, 2006.

Rehearing Denied Aug. 21, 2006.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Fabian White appeals from his convictions and 115–year sentence for murder, attempted murder, and escape. We find that the trial court did not err in refusing to instruct the jury on criminal recklessness as a lesser-included offense of attempted murder. Criminal recklessness is not inherently included in the crime of attempted murder, and in this case, it is not factually included because the charging information for attempted murder included no element of reckless behavior. Furthermore, the trial court did not abuse its discretion in sentencing White to consecutive enhanced sentences. Indiana Code § 35–50–2–1.3, which states that "[i]n imposing consecutive sentences in accordance with IC 35–50–1–2[,] a court is required to use the appropriate advisory sentence in

imposing a consecutive sentence," adds no restrictions on the ability of trial courts to impose consecutive sentences beyond the restrictions already in place by virtue of the statute it references, Indiana Code § 35–50–1–2. Finally, White's sentence is not inappropriate. The trial court's judgment is affirmed.

## Facts and Procedural History

The facts most favorable to the jury verdict are as follows. On the night of October 2, 2004, White was at his house in South Bend, Indiana, with Freeman Jordan ("Jordan"), Larry Patterson ("Patterson"), and Candace Marvel ("Marvel"). Mike Wallace ("Wallace") and Jay Johnson ("Johnson") also visited the house, and Wallace talked to White. Wallace and Johnson then left, only to return at approximately 7:00 a.m. the next morning. White heard them knock and went to the door. While Johnson sat on the porch, White and Wallace talked in the living room about drugs, money, and a gun. At some point, White went to a bedroom, retrieved a pistol, and returned to Wallace and Johnson. White then "tussled" with Wallace and Johnson on the porch. Tr. p. 350. Jordan heard gunshots and went out to the porch, where he saw Wallace lying on the floor.

According to Johnson, White then went back to the bedroom and yelled, "Give me my other pistol so I can finish these n———." Id. at 501. After Marvel gave White another gun, White went back to the porch, shot Wallace one or two more times, kicked him, and said, "[T]hat's for hitting me at Boy's School." Id. at 305–06, 340–43. White also shot Johnson multiple times, including as Johnson jumped out of a window to escape the house. White, Jordan, Patterson, and Marvel also left the house. White followed Johnson, who eventually entered another house and called for help. Johnson suffered four gunshot wounds, including two to his abdomen, one in his buttock, and one in his thigh. He underwent surgery and survived, but Wallace died as a result of his gunshot wounds. Police later arrested White in Michigan City, Indiana.

The State charged White with murder,[1] attempted murder,[2] and escape as a Class D felony,[3] based on the fact that White violated a home detention order by leaving his house after the shootings. At trial, White tendered a jury instruction on criminal recklessness as a lesser-included offense of attempted murder. The trial court refused to give the instruction to the jury, explaining:

> Somewhere in my office on my desk are two cases Ellis v. State is one of them. It's a Supreme Court case, and the other is also a Supreme Court Case. The second name escapes me right now. I'll give you that in about two seconds. It talks about criminal recklessness being neither factually nor inherently included in attempted murder.

Tr. Vol. 4, p. 81–82. The jury found White guilty of murder and attempted murder, and White pled guilty to the escape charge.

In sentencing White, the trial court found as an aggravating circumstance "White's history of juvenile adjudications and the number and nature of [White's] criminal convictions." Appellant's App. p. 72. The court found no mitigating circumstances and sentenced White to consecutive maximum terms of sixty-five years for murder and fifty years for attempted murder, along with a concurrent maximum

1. Ind.Code § 35–42–1–1(1).

2. Id.; Ind.Code § 35–41–5–1.

3. Ind.Code § 35–44–3–5(b).

term of three years for escape, for a total executed sentence of 115 years. White now appeals.

### Discussion and Decision

On appeal, White raises three issues: (1) whether the trial court erred by refusing to instruct the jury on criminal recklessness as a factually lesser-included offense of attempted murder; (2) whether the trial court was required to use advisory sentences in imposing consecutive sentences; and (3) whether White's sentence is inappropriate in light of the nature of his offenses and his character. We address each issue in turn.

### I. Jury Instruction

■ White first argues that the trial court erred by refusing to instruct the jury on criminal recklessness as a lesser-included offense of attempted murder. As the Indiana Supreme Court has stated:

> A requested instruction for a lesser included offense of the crime charged should be given if the lesser included offense is either inherently or factually included in the crime charged, and if, based upon the evidence presented in the case, there existed a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense such that a jury could conclude that the lesser offense was committed but not the greater.

*Ellis v. State*, 736 N.E.2d 731, 733 (Ind. 2000) (citing *Wright v. State*, 658 N.E.2d 563, 567 (Ind.1995)) (formatting altered). If a trial court rejects a tendered lesser-included offense instruction on the basis of its view of the law, as opposed to a finding that there is no serious evidentiary dispute, appellate review of the ruling is *de novo*. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998). Here, the trial court cited *Ellis* for the proposition that criminal recklessness is "neither factually nor inherently included in attempted murder."

Tr. Vol. 4, p. 82. Because the court's rejection of White's lesser-included offense instruction was based on its view of the law, as opposed to a finding that there was no serious evidentiary dispute, we review its decision *de novo*. *Brown*, 703 N.E.2d at 1019.

■ It is well-established in Indiana that criminal recklessness is not an inherently included offense of attempted murder. *Ellis*, 736 N.E.2d at 734. However, whether an offense is a factually lesser-included offense of another offense requires a case-by-case determination. The trial court must compare the statute defining the alleged lesser-included offense with the charging instrument in the case. *Wright*, 658 N.E.2d at 567. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser-included offense, then the alleged lesser-included offense is factually included in the crime charged. *Id.* That said, the State may foreclose instruction on a lesser offense that is not *inherently* included in the crime charged by omitting from a charging instrument factual allegations sufficient to charge the lesser offense. *Id.* at 570 (citing *Jones v. State*, 438 N.E.2d 972 (Ind. 1982)). Our Supreme Court has faced the question of whether criminal recklessness is factually included in attempted murder at least twice since it issued its watershed opinion in *Wright* in 1995, and its decision in those cases guides our resolution of the instant question.

In *Wilson v. State*, the defendant was charged with attempted murder as follows:

> DONALD STEWART WILSON did attempt to commit the crime of Murder, to-wit: Knowingly or intentionally killing another human being, and did so by knowingly or intentionally pointing and firing a Ruger .357 Magnum handgun at

the person of Antonio Rodriguez, striking him in his left forearm, said conduct constituting a substantial step toward commission of the crime of Murder upon Antonio Rodriguez, all with the intent to kill Antonio Rodriguez.

697 N.E.2d 466, 477 (Ind.1998), *reh'g denied.* The Court held that criminal recklessness was not factually included in the crime charged because "it is clear that no element of reckless behavior was included in [the] charge." *Id.* (quoting *Humes v. State,* 426 N.E.2d 379, 382 (Ind.1981)).

In *Ellis,* the defendant was charged with attempted murder as follows: "Ellis did attempt to commit the crime of Murder by knowingly or intentionally firing a deadly weapon at and against the person of [the victim], which conduct constituted a substantial step toward the commission of the crime of Murder[.]" 736 N.E.2d at 735. The Court, citing *Wilson,* again held that because the attempted murder charge "did not include any element of reckless behavior, [criminal recklessness] was not factually included in the crime charged." *Id.*

■ In the instant case, the information charging White with attempted murder provides, in pertinent part: "FABIAN S. WHITE did attempt to kill Jay Johnson, by shooting him several times with a firearm, with the intent to commit the crime of murder, and which constituted a substantial step toward the commission of the crime of murder, that is intentionally killing another human being." Appellant's App. p. 4. This information, like the informations in *Wilson* and *Ellis,* includes no element of reckless behavior. Therefore, we find, like our Supreme Court found in those two cases, that criminal recklessness was not factually included in the attempted murder charge.

White seeks to avoid this conclusion by contending that the analysis from *Ellis* is "flawed." Appellant's Br. p. 13. He focuses on the language of the criminal recklessness statute, which provides, in pertinent part: "A person who recklessly, knowingly, or intentionally ... inflicts serious bodily injury on another person ... commits criminal recklessness.... [T]he offense is a Class C felony if committed by means of a deadly weapon." Ind.Code § 35–42–2–2(d). He argues that because the statute refers to conduct committed "recklessly, *knowingly, or intentionally,*" criminal recklessness "does not necessarily require reckless behavior." Appellant's Br. p. 13.

We decline White's invitation for us to abrogate *Ellis.* First, we note that this Court is bound by the decisions of the Indiana Supreme Court. *Moore v. State,* 839 N.E.2d 178, 185 n. 4 (Ind.Ct.App.2005), *trans. denied.* Second, and equally important, we cannot agree that *Ellis* was wrongly decided. *Ellis* relied on *Wilson,* which in turn relied on *Humes v. State,* 426 N.E.2d 379 (Ind.1981). In *Humes,* our Supreme Court explained:

> The language in [the criminal recklessness statute] appears contradictory at first glance since the concept of "recklessly" is placed in juxtaposition with the terms "knowingly or intentionally." However, a closer study of this section of the code, the definitions of the terms involved, and the comments provided by the Indiana Criminal Law Study Commission reveals that the essential element of this offense is reckless behavior. Intentional acts involving an actual injury are covered in the offenses of homicide, manslaughter and battery. Likewise, any intentional acts which do not actually result in an injury but are a substantial step toward the commission of those crimes are covered by the general attempt statute.

*Id.* at 382–83. The holding in *Humes* makes eminent sense to us—the essential

element of the offense of criminal recklessness is reckless behavior.[4]  Therefore, we reject White's challenge to *Ellis.*

To the extent that the trial court found that criminal recklessness can never be factually included in attempted murder, it was incorrect.  However, because criminal recklessness was neither inherently nor factually included in attempted murder in *this* case, the trial court did not err in refusing to instruct the jury on criminal recklessness.

## II.  Consecutive Sentences

White next argues that because the trial court imposed consecutive sentences, it was required to use the statutory advisory sentences.  The trial court sentenced White to the statutory maximum of sixty-five years for the murder conviction and the statutory maximum of fifty years for the attempted murder conviction.  Indiana Code § 35–50–2–1.3 provides:

(a) For purposes of sections 3 through 7 of this chapter, "advisory sentence" means a guideline sentence that the court may voluntarily consider as the midpoint between the maximum sentence and the minimum sentence.

(b) Except as provided in subsection (c), a court is not required to use an advisory sentence.

(c) *In imposing:*

(1) *consecutive sentences in accordance with IC 35–50–1–2;*

(2) an additional fixed term to an habitual offender under section 8 of this chapter;  or

(3) an additional fixed term to a repeat sexual offender under section 14 of this chapter;

*a court is required to use the appropriate advisory sentence in imposing a consecutive sentence* or an additional fixed term.  However, the court is not required to use the advisory sentence in imposing the sentence for the underlying offense.[5]

(Emphases added).  White contends that under this statute, in imposing consecutive sentences, a trial court can only use advisory sentences.  The advisory sentence for murder is fifty-five years,[6] and the advisory sentence for attempted murder, a Class A felony, is thirty years.[7]  Therefore, according to White, if the trial court wanted to order consecutive sentences, it should have used the advisory sentences, for a total sentence of eighty-five years.

White acknowledges that courts generally must sentence defendants under the statute in effect at the time the defendant committed the offense.  *Jacobs v. State,* 835 N.E.2d 485, 491 n. 7 (Ind.2005).  Indiana Code § 35–50–2–1.3 went into effect on April 25, 2005, *see* P.L. 71–2005, § 5, more than six months *after* White committed his offenses, so under the gen-

4.  We recognize that *Humes* was written long before our Supreme Court re-shaped the law regarding lesser-included offense instructions in *Wright* in 1995.  However, that *Humes* survived *Wright* is evidenced by the fact that the Court relied upon it in 1998 when it wrote *Wilson.*

5.  The last sentence of Indiana Code § 35–50–2–1.3(c), i.e., "the court is not required to use the advisory sentence in imposing the sentence for the underlying offense," is confusing.  "Underlying offense" is a legal term of art that only applies to repeat offender sen-

tencing enhancements, such as subsections (c)(2) and (c)(3), which deal with habitual offenders and repeat sexual offenders, respectively.  When dealing strictly with consecutive sentences for distinct criminal violations, as under subsection (c)(1), there is no "underlying offense."  Therefore, the last sentence of the statute can only apply to subsections (c)(2) and (c)(3).

6.  Ind.Code § 35–50–2–3(a).

7.  Ind.Code § 35–50–2–4.

eral rule, White would not receive the benefit of the new statute. However, White cites the narrow exception to the general rule: the doctrine of amelioration. The doctrine of amelioration provides that "a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime." *Richards v. State,* 681 N.E.2d 208, 213 (Ind.1997) (quoting *Lunsford v. State,* 640 N.E.2d 59, 60 (Ind.Ct.App. 1994)). Under White's interpretation of Indiana Code § 35–50–2–1.3, the statute would be ameliorative and would therefore entitle him to have his sentences reduced to the statutory advisory sentences. In order to determine whether the statute applies to White's sentencing, we must first determine whether it is ameliorative.

If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Woodward v. State,* 798 N.E.2d 260, 262 (Ind.Ct.App.2003), *trans. denied.* However, when the language is susceptible to more than one construction, we must construe the statute in accord with the apparent legislative intent. *Id.* Indiana Code § 35–50–2–1.3 is ambiguous. Read as a single sentence, the portion of the statute relevant to our discussion reads: "In imposing consecutive sentences in accordance with IC 35–50–1–2[,] a court is required to use the appropriate advisory sentence in imposing a consecutive sentence[.]" Indiana Code § 35–50–1–2 provides, in pertinent part:

(c) Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the:

(1) aggravating circumstances in IC 35–38–1–7.1(a); and

(2) mitigating circumstances in IC 35–38–1–7.1(b);

in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Because Indiana Code § 35–50–1–2 deals generally with the imposition of consecutive sentences, one construction of Indiana Code § 35–50–2–1.3 is that the trial court must use advisory sentences whenever it imposes consecutive sentences. This is White's construction.

The State offers a different construction. Specifically, it argues that when Indiana Code § 35–50–2–1.3 and Indiana Code § 35–50–1–2 are read together, "it becomes clear that the purpose of Indiana Code § 35–50–2–1.3(c) is to ensure that consecutive sentences imposed for non-violent crimes arising out of the same episode of criminal conduct do not exceed the advisory sentence for the next highest felony." Appellee's Br. p. 13. Though this conclusion is not, as the State contends, "clear," we must agree.

Again, when the language of a penal statute is susceptible to more than one construction, we must construe the statute in accord with the apparent legislative intent. *Woodward,* 798 N.E.2d at 262. We strictly construe penal statutes against the State to avoid enlarging them beyond the fair meaning of the language used.

*Hatcher v. State,* 762 N.E.2d 170, 172–73 (Ind.Ct.App.2002), *trans. denied.* However, they are not to be construed so strictly as to defeat the obvious or expressed intent of the legislature. *Fuller v. State,* 752 N.E.2d 235, 238 (Ind.Ct.App.2001). Therefore, we presume that the legislature intended the language to be applied logically and not to bring about an unjust or absurd result. *Brown v. State,* 790 N.E.2d 1061, 1064 (Ind.Ct.App.2003).

■ Indiana Code § 35–50–2–1.3 instructs: "In imposing consecutive sentences in accordance with IC 35–50–1–2[,] a court is required to use the appropriate advisory sentence in imposing a consecutive sentence[.]" We conclude that when the General Assembly wrote "appropriate advisory sentence," it was referring to the total penalty for "an episode of criminal conduct," which, except for crimes of violence, is not to exceed "the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." *See* Ind.Code § 35–50–1–2(c). In other words, the advisory sentence for a felony which is one class of felony higher than the most serious of the felonies for which the person has been convicted is the "appropriate advisory sentence" for an episode of non-violent criminal conduct. Indiana Code § 35–50–1–2 in no other way limits the ability of a trial court to impose consecutive sentences. In turn, Indiana Code § 35–50–2–1.3, which references Indiana Code § 35–50–1–2, imposes no additional restrictions on the ability of trial courts to impose consecutive sentences, and therefore, is not ameliorative.

Because Indiana Code § 35–50–2–1.3 does not represent an ameliorative change in the sentencing statutes, it does not apply to White, who committed his offenses on October 3, 2004, well before Indiana Code § 35–50–2–1.3 came into effect. *See Richards,* 681 N.E.2d at 213. Nonetheless, we note that even if Indiana Code § 35–50–2–1.3 had been in effect at the time of White's offenses, the outcome of this appeal would be no different, because the statute places no restrictions on the ability of trial courts to impose consecutive sentences beyond the restrictions already in place by virtue of Indiana Code § 35–50–1–2(c). The decision to impose consecutive sentences is generally within the trial court's discretion, *Archer v. State,* 689 N.E.2d 678, 683 (Ind.1997), and here, the trial court did not abuse its discretion.[8]

### III. Appropriateness of Sentence

■ Finally, White argues that his 115–year sentence is inappropriate in light of the nature of his offenses and his character. Indiana Rule of Appellate Procedure 7(B) states: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when

---

**8.** One panel of this Court has stated: "A court is required to use an advisory sentence in imposing consecutive sentences in accordance with Ind.Code § 35–50–1–2 (addressing crimes of violence) and in imposing an additional fixed term on an habitual offender or a repeat sexual offender." *Weaver v. State,* 845 N.E.2d 1066, 1070 (Ind.Ct.App.2006), *trans. pending; see also Banks v. State,* 841 N.E.2d 654, 661 (Ind.Ct.App.2006) (May, J., concurring), *trans. denied.* To the extent that this statement, which basically tracks the language of Indiana Code § 35–50–2–1.3, conflicts with our holding, we note that the *Weaver* panel was not deciding the consecutive sentencing issue we address today.

certain broad conditions are satisfied." *Purvis v. State*, 829 N.E.2d 572, 587 (Ind. Ct.App.2005) (internal citations omitted), *trans. denied.* After due consideration of the trial court's decision, we cannot say that White's sentence is inappropriate.

Regarding the nature of White's offenses, we first note that White's actions left one man dead and another man seriously wounded. However, it is the way in which White brought about these results that is most appalling. After confronting Wallace and Johnson at the door and speaking briefly with Wallace about drugs, money, and a gun, White went to a bedroom, retrieved a pistol, and returned to Wallace and Johnson. After a tussle between the three, White fired his weapon, leaving Wallace lying on the floor. After White first shot Wallace, he went back into the house and yelled, "Give me my other pistol so I can finish these n———." White then went back to the porch, shot Wallace one or two more times, kicked him, and said, "[T]hat's for hitting me at Boy's School." Then, as Johnson, who had already been wounded, attempted to escape by jumping out of a window, White continued to shoot at him, striking him again in the buttocks. As the State stresses, each time White went to retrieve a weapon, he had an opportunity to weigh his options and reflect upon his actions. Sadly, White made the decision to forge ahead with his shooting spree, and he continued to fire bullets into Wallace's body as he lay helpless on the floor. White's sentence is not inappropriate in light of the nature of his offenses.

Even more so than the nature of his offenses, it is White's character that leads us to conclude that his sentence is not inappropriate. White admitted being a member of the Gangster Disciple gang, and the criminal history found in the presentence investigation report is worth detailing. At the age of twelve, White was cited for battery and theft, but the State did not pursue those charges. One year later, White admitted to charges of theft (a Class D felony if committed by an adult), criminal conversion, possession of marijuana, and false reporting. Thereafter, he was sent to Kokomo Academy and ordered to complete a substance abuse program, which he failed two times. Upon the second failure, he was placed on formal probation and sent to a juvenile institution in Arizona. When this attempt at rehabilitation failed, White served his first sentence with the Indiana Department of Correction. He was released, at the age of fifteen, on May 25, 2001, only to be charged less than three months later with attempted auto theft, a Class D felony, and misdemeanor counts for resisting law enforcement, possession of marijuana, and false reporting. He pled guilty to the three misdemeanor charges, and the State agreed to dismiss the attempted auto theft charge. He served another term with the Indiana Department of Correction from September 2001 to November 2002.

Within seven months after his release on his juvenile charges, three separate criminal cases were filed against White, composed of seven charges, including four felonies. On January 6, 2004, the trial court sentenced White to five and one-half years based on convictions for carrying a handgun without a license on school property, a Class C felony, criminal trespass, a Class D felony, and two counts of carrying a handgun without a license, a Class A misdemeanor. In July or August of 2004, White was released from prison to probation. As a term of his probation, White was ordered to serve one year of home detention. Just a few months later, while on home detention, White committed the instant offenses and was charged with murder, attempted murder, and escape.

Despite his extensive and repeated contact with law enforcement, White was not deterred from criminal activity, and he failed to take advantage of several opportunities for rehabilitation. Furthermore, and perhaps most important in evaluating the appropriateness of White's sentence, the seriousness of the crimes White has committed has escalated. His juvenile adjudications for theft, criminal conversion, possession of marijuana, resisting law enforcement, and false reporting, his prior adult convictions for criminal trespass and three counts of carrying a handgun without a license at the age of seventeen, and his current convictions for murder, attempted murder, and escape speak volumes about White's character, and nothing about it leads us to find that his sentence in this cause is inappropriate.

### Conclusion

The trial court properly rejected White's instruction on criminal recklessness as a lesser-included offense of attempted murder. Furthermore, the trial court did not err in sentencing White to consecutive enhanced sentences. Finally, White's 115–year sentence is not inappropriate. The judgment of the trial court is affirmed.

Affirmed.

DARDEN, J., and RILEY, J., concur.