**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY G. RAFF**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN L. REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAMIONNE M. NICHOLS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1203-CR-133 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

**APPEAL FROM THE ALLEN SUPERIOR COURT**
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1101-FB-11

**September 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Damionne Nichols ("Nichols") appeals his conviction and sentence for unlawful possession of a firearm by a serious violent felon, a class B felony.[1]

We affirm.

## ISSUES

1.     Whether there is sufficient evidence to support Nichols's conviction.

2.     Whether Nichols's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

## FACTS

During the afternoon of January 15, 2011, Malcolm Robinson answered a knock at the door of his Fort Wayne home, which he shared with his mother, Mazelle Robinson, and brother, Micah Robinson. Malcolm opened the door to find Nichols standing on the porch. Malcolm noticed that Sheila Robinson, Micah's estranged wife and Nichols's mother, was sitting in Micah's white Oldsmobile Bravada, which was parked in front of the residence. Nichols appeared upset, "[l]ike he wanted to snap, like he wanted to go off on somebody," and demanded to see Micah. (Tr. 46).

Micah, Mazelle, and Danielle Robinson, Malcolm's sister, who was visiting, all walked out onto the front porch. "[A] lot of loud talking, arguing, [and] disrespect . . ." ensued. (Tr. 48). During the exchange, all three of the Robinson siblings observed the

---

[1]  Ind. Code § 35-47-4-5.

grip of a gun sticking out of Nichols's waistband. Upon seeing the gun, Danielle telephoned the police.

Before the police arrived, Keenan Nichols, Nichols's brother, "came and grabbed him off the porch" and convinced Nichols to leave. (Tr. 48). Nichols, Keenan, and Sheila drove off in the Bravada.

Shortly after police dispatch relayed a description of Nichols and the Bravada, Patrol Sergeant Trent Farrell saw Sheila pull into a gas station parking lot. Officer Farrell observed that she "used the lot illegally to avoid the [traffic] light." (Tr. 88). Officer Farrell began following the vehicle and confirmed that it was the vehicle for which officers were searching. Officer Farrell initiated a "felony high risk traffic stop" because there was a report that one of the passengers was armed. (Tr. 92-93).

Officer Farrell drew his weapon, and as he approached the vehicle, ordered the occupants to put up their hands. Sheila and Keenan, who were in the front of the vehicle, immediately did as Officer Farrell ordered. Nichols, however, "kind of ducked down," (Tr. 91), and Officer Farrell could see him making "a furtive movement" in the back seat. (Tr. 102). After Officer Farrell repeated his order, Nichols finally put up his hands.

After back-up officers removed and secured the vehicle's occupants, Officer Farrell approached the vehicle "to visually clear [it] and make sure" no one was hiding in it. (Tr. 93). He noticed "a gun that was stuck down in the map pocket" on the back of the driver's seat. (Tr. 96). The gun, a Taurus Millenium 9mm handgun, did not have a magazine in it. Officers placed Nichols under arrest.

3

On January 21, 2011, the State charged Nichols with unlawful possession of a firearm by a serious violent felon, a class B felony. The trial court held a jury trial on January 19, 2012.

Detective Okey Sharp testified that a semi-automatic weapon does not need a magazine in order to fire if it has a round in the chamber. During the trial, officers present at the scene testified that either they did not know or could not recall whether the gun had a round in the chamber when they collected it from the vehicle. The trial court admitted the gun into evidence; no one, however, testified that the gun was in fact a semi-automatic handgun. The jury found Nichols guilty as charged.

The trial court held a sentencing hearing on February 28, 2012. According to the presentence investigation report ("PSI"), Nichols had several adjudications as a juvenile delinquent between 1996 and 2000. These included adjudications for crimes which, if committed by an adult, would have constituted battery, criminal conversion, class D felony theft, and class D felony receiving stolen property. The PSI further showed that, as an adult, Nichols had been convicted of resisting law enforcement, criminal conversion, driving without a license, disorderly conduct, unauthorized absence from home detention, class C felony battery, and class D felony criminal recklessness. Nichols also had had his probation revoked on two occasions, two suspended sentences revoked, and a work-release placement revoked.

4

The PSI further showed that Nichols has three children, each of whom resides with his or her respective mother. Although Nichols had been ordered to pay child support for two of his children, he had not been employed since 2009.

During the sentencing hearing, Nichols proffered as a mitigating circumstance that his incarceration would impose a hardship on his children. After considering aggravating and mitigating circumstances and finding that the aggravators, particularly Nichols's criminal history, outweighed the mitigators, the trial court sentenced Nichols to sixteen years executed at the Department of Correction.

<u>DECISION</u>

1. <u>Sufficiency of the Evidence</u>

Nichols asserts that the evidence is insufficient to support his conviction. Specifically, he contends that the gun in his possession was not a firearm.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences <u>supporting</u> the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (quotations and citations omitted) (emphasis added).

Indiana Code § 35-47-4-5 provides that a serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a class B felony.[2]  Indiana Code § 35-47-1-5 defines "firearm" as any weapon that is:

> (A) capable of expelling; or
> (B) designed to expel; or
> (2) that may readily be converted to expel; a projectile by means of
> an explosion.

Nichols argues that the gun in his possession was not capable of expelling a projectile by means of explosion because it did not have a magazine, and therefore, it was not a firearm as defined by the statute.

In *Staten v. State*, 844 N.E.2d 186, 187 (Ind. Ct. App. 2006), *trans. denied*, this court held that Indiana Code § 35-47-1-5 "clearly contemplates that some conversion, such as reorganization or assembly, of parts may be required."  The court therefore concluded that "the statute includes in the definition of 'firearm' a disassembled gun." *Id.*  In *State v. Gibbs*, 769 N.E.2d 594, 596-97 (Ind. Ct. App. 2002), *trans. denied*, this court held that, even though inoperable, a gun that was <u>designed</u> to expel projectiles by means of an explosion fell within the statutory definition of a firearm.  *See also Manley v. State*, 656 N.E.2d 277, 279 (Ind. Ct. App. 1995) (finding that a "handgun is, by definition, a firearm with certain characteristics" and that a handgun need not be operable to fit within the definition of a firearm), *trans. denied*.

---

[2] During the trial, Nichols stipulated that he "ha[d] a qualifying prior conviction under IC 35-47-4-5 from the Allen Superior Court . . . dating from November 5, 2004." (State's Ex. 5).

The absence of a magazine notwithstanding, the gun in this case was "designed to expel . . . a projectile by means of an explosion." *See* I.C. § 35-47-1-5. Even if, as Nichols claims, the gun was designed to expel a projectile only when outfitted with a magazine, the gun was "capable" of expelling a projectile. *See, e.g., Staten*, 844 N.E.2d at 187 (holding that a disassembled gun meets the definition of a firearm). Thus, contrary to Nichols's assertion, whether the magazine was readily available is of no significance. *See id*. at 188 ("[T]he fact that the handgun was not immediately capable of firing was irrelevant under the statute."). We therefore find the evidence sufficient to sustain Nichols's conviction.

2. <u>Inappropriate Sentence</u>

Nichols also asserts that his sentence is inappropriate. He maintains that "the nature of the offense is not so aggravated as to justify a sixteen (16) year sentence" because the gun "was inoperable because it did not have a magazine, . . . was not loaded," and "was not used in a threatening or dangerous manner." Nichols's Br. at 7.

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). It is the defendant's burden to "'persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

In determining whether a sentence is inappropriate, the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Indiana Code § 35-50-2-5 provides that "[a] person who commits a Class B felony shall be imprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." Again, Nichols received a sentence of sixteen years.

As to the nature of the offense, the evidence shows that Nichols went to his stepfather's home while armed with a firearm in order to confront his stepfather. The exchange between Nichols and the Robinson family became heated and could have escalated into violence, as indicated by Micah's testimony that, upon seeing the gun, his intention became to defend his family and that he "was gonna [sic] do what [he] had to do" to defend them. (Tr. 61). The presence of the gun also frightened Danielle enough that she telephoned the police.

As to Nichols's character, the record shows that he has an extensive criminal history spanning over a decade, including offenses against persons. Given Nichols's criminal history of convictions and probation violations, it is clear that he has a disregard for the law. We therefore cannot say that his sentence of sixteen years in the Department of Correction is inappropriate.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.